IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GERHARD CURTIS STERN,<br><br>Defendant. | CR 09–22–BLG–DWM<br><br><br><br>ORDER |

On December 23, 2022, Defendant Gerhard Curtis Stern filed a motion to reduce his 480-month federal aggravated sexual abuse sentence under 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 150; *see* Doc. 63 (Judg.).) His projected release date is June 20, 2043. *See* Inmate Locator, http://www.bop.gov/inmateloc (accessed May 3, 2023). On January 9, 2023, counsel was appointed to represent the defendant. (Doc. 153.) Appointed counsel filed an amended motion on March 17, 2023. (Docs. 158, 159, 160.) The government opposes. (Doc. 161.) For the reasons stated below, Stern's motion is denied.

**ANALYSIS**

The First Step Act gives district courts wide discretion to reduce an existing term of imprisonment so long as a defendant first seeks relief from the Bureau of Prisons and the reduction: (1) is consistent with the applicable policy statements of

1

the Sentencing Commission, (2) takes into consideration the sentencing factors of 18 U.S.C. § 3553(a), and (3) is warranted by "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam). Because the Sentencing Guidelines have not been updated since the First Step Act was passed, "the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam). Thus, this Court's decision turns on whether the defendant has presented extraordinary and compelling reasons for a reduction and whether that reduction comports with the objectives of § 3553(a). *See Keller*, 2 F.4th at 1284.

Here, Stern argues that compelling and extraordinary circumstances exist because he is the only suitable caregiver for his ailing father and his own health conditions put him at heightened risk of serious health issues were he to contract COVID-19. Ultimately, although those circumstances exist here, a sentence reduction would not be consistent with the §3553(a) factors.

I.   **Exhaustion of Administrative Remedies**

A defendant may only file a motion for compassionate release with the district court once he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

2

defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, Stern filed a request for relief with the warden at his facility on October 16, 2022, (Doc. 150-2 at 9), and his request was denied by the acting warden of his facility on November 3, 2022, (*id.* at 10). Stern has therefore exhausted his administrative remedies as required by statute.

## II.   Extraordinary and Compelling Reasons

### A.   Health Issues and COVID-19

While the First Step Act does not define "extraordinary and compelling reasons," the Sentencing Commission's nonbinding policy statements provide informative and illustrative examples of such reasons, including a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG §1B1.13(1)(A)(ii), app. n. 1(A)(ii). Many district courts have found that defendants can also show extraordinary and compelling reasons if they show: "(1) their health conditions put them at increased risk of severe COVID-19 symptoms and (2) they are at risk of infection." *United States v. Stone*, 2022 WL 2483755, at *2 (E.D. Cal. July 6, 2022) (collecting cases). This calculus can shift if a defendant is vaccinated, although a defendant may then "offer[] evidence of an elevated personal risk of severe harm despite the protections of vaccination." *Id.*

3

Stern is 46 years old. (*See* Doc. 160 at 1.) He has been diagnosed with Type II Diabetes, (*see id.* at 7), as well as elevated blood pressure and a torn rotator cuff, (*see id.* at 12). The rotator cuff cannot be orthopedically repaired until his diabetes-related glycosylated hemoglobin percentage goes down. (*See id.*)

Although Stern is vaccinated against COVID-19, (Doc. 150 at 5), his diabetes and elevated blood pressure each place him at greater risk of developing severe illness should he contract COVID-19 despite his full vaccination, *see* Centers for Disease Control, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Feb. 10, 2023, and accessed May 3, 2023) ("A person's risk of severe illness from COVID-19 increases as the number of underlying medical conditions they have increases."). Despite this heightened risk, Stern has contracted COVID-19 at least once and he did not require additional medical treatment at that time. (Doc. 150 at 5.) FCI Tuscon—the facility where Stern is housed—currently has zero active COVID-19 cases in staff members and inmates. *See* BOP COVID-19, https://www.bop.gov/coronavirus (accessed May 3, 2023). BOP records indicate no inmates have died but over 250 inmates and staff members have "recovered" from the virus at this facility. *See* BOP COVID-19, https://www.bop.gov/coronavirus (accessed May 3, 2023).

Accordingly, in combination, Stern's medical conditions constitute an

4

extraordinary and compelling reason for his release.

### B.     Care for Father

The Sentencing Commission's nonbinding policy statements indicate that "the death or incapacitation of the caregiver of the defendant's minor child or minor children" or "the incapacitation of the defendant's spouse or registered partner," particularly where "the defendant would be the only available caregiver." USSG §1B1.13(1) app. n. (1)(C).  Extraordinary and compelling reasons not enumerated in Application Note 1 (A) through (C) are allowed for in subsection D, which would suggest that the Court can consider the death or incapacitation of a family member other than a minor child or a spouse/registered partner to be an extraordinary and compelling reason for reduction of sentence.  Stern argues that his father is significantly ill and that Stern is needed to assist his father in every-day duties. (Doc. 150 at 2.)  The government responds that Stern's averred reasons do not rise to the level of an extraordinary reason for release because he has not met his burden of demonstrating why he is the only available caregiver for his father. (Doc. 161 at 7.)  Stern has the better argument.

A number of district courts have found that the incapacitation of a close family member constitutes an extraordinary and compelling reason for release.  For example, in *United States v. Thompson*, 2021 WL 2418573 (W.D. Ken. June 14, 2021), the defendant, who had been convicted of conspiracy to possess with intent

5

to distribute methamphetamine, cited her 67-year-old mother's "deteriorating health" as the reason she should be released pursuant to § 3582(c)(1)(A). The defendant's mother had been acting as the primary caregiver to the defendant's children and grandchild, and the defendant's husband, as well as one of her children, were deceased. The defendant was found to have extraordinary and compelling reasons for her release. Compassionate release was also successfully sought in *United States v. Griffin*, 2020 WL 7295765 (S.D. Fla. Dec. 8, 2020), where the defendant's older sister required constant care and no other possible caregiver was available. And, similar to the present case, the defendant in United *States v. Bucci*, 409 F. Supp. 3d 1 (D. Mass. 2019), successfully brought a motion for compassionate release in order to care for an incapacitated parent.

Stern's father is suffering from stage 4 prostate cancer and heart issues. (Doc. 159 at 6.) His medical issues require frequent medical visits and he currently lives alone in Ashland, Montana, far from these services. There are no other family members available to act as a caregiver for Stern's father. (Doc. 150 at 4.) Accordingly, the need to care for Stern's ailing father constitutes an additional, independent extraordinary and compelling reason for early release.

### III. Section 3553(a) Factors

Nevertheless, demonstrating an extraordinary and compelling reason to reduce a sentence meets only one element of § 3582(c)(1)(A). To determine

6

whether relief is appropriate, a court must also consider the federal sentencing objectives set forth in 18 U.S.C. § 3553(a). Pertinent factors include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care. *See* 18 U.S.C. § 3553(a)(1), (2). Courts may also consider the advisory guideline range and the need to "avoid unwarranted sentencing disparities" among similarly situated defendants. *See id.* § 3553(a)(4), (6).

Stern was found guilty of the aggravated sexual abuse of his daughter, who was four years old at the time of the incident and five years old at the time of trial. (*See* Doc. 70 at 30.) The abuse was first discovered by authorities when Stern's daughter disclosed to a nurse at St. Labre Indian School in Ashland, Montana that her father, Stern, put his fingers and "a stick" in her privates, and that he had put his penis in her mouth. (*Id.* at 33, 36.) A jury found him guilty, and Stern received a 480-month sentence for this offense, of which he has served roughly 160 months. While Stern addresses his rehabilitation efforts and sentencing disparities in his motion, (Doc. 150 at 6–8), his appointed counsel does not substantively address the § 3553(a) factors in his briefing, (*see* Doc. 159). The government, on the other

7

hand, argues that because Stern has served such a small portion of his lengthy sentence, granting his motion would be insufficient for deterrence, the need for just punishment, and to avoid unwarranted sentencing disparities. Ultimately, the government is correct.

If Stern's sentence was reduced to time-served with or without a condition of home confinement, he would have served only 160 of the 480 months sentenced. Further, his advisory guideline range was 360 months to life and the statutory mandatory minimum was 360 months, so according to the Court at sentencing, "the sentence that is imposed cannot be less than 30 years." (Doc. 72 at 6.)

At sentencing, the Court considered, among other factors, Stern's issues with substance abuse and his "difficult childhood" during which "he was a stepchild, in effect, and was beaten quite a bit on a regular basis." (*Id.* at 9.) The Court also considered Stern's criminal history, including his history of committing other acts of sexual assault and in addition to the remaining § 3553(a) factors, that the sentence given "will protect the public from further crimes of the defendant more so than a sentence at the low end of the guideline." (*Id.* at 14–15.) Put simply, Stern's sentence incorporated the § 3553(a) sentencing factors and Stern has not demonstrated why his circumstances have changed to such an extent so as to warrant a substantially different analysis under those factors. Reducing Stern's

sentence to the approximately 160 months he has served to date would be insufficient for specific deterrence, would not be just punishment, would create sentencing disparities, denigrate the seriousness of his crimes, and undermine respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A)–(C).

## CONCLUSION

Accordingly, IT IS ORDERED that the defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Docs. 150, 158) is DENIED.

DATED this 3rd day of May, 2023.

Donald W. Molloy, District Judge
United States District Court